**HARTWICK COLLEGE, Aurelia Osborn Fox Memorial Hospital Society, and Railroad and Local Men's Christian Association of Oneonta, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 81–CV–281.**

United States District Court, N.D. New York.

May 31, 1984.

Herzog, Nichols, Engstrom & Koplovitz, Albany, N.Y., for plaintiffs; James M. Reilly, Albany, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for defendant; Louis J. Lombardo, Tax Div. Atty., Dept. of Justice, Washington, D.C., of counsel.

## MEMORANDUM–DECISION & ORDER

McCURN, District Judge.

This is an action by four residuary beneficiaries under the Last Will and Testament of Jessie S. Dewar to recover an overpayment of income taxes by the estate for the estate's taxable year ending April 30, 1977. The residuary beneficiaries, all of which are charitable organizations, contend that the entire amount of income earned by the estate qualified for the deduction provided by section 642(c)(2) of the Internal Revenue Code, 26 U.S.C. § 642(c)(2), which states, in pertinent part:

§ 642. Special rules for credits and deductions.

. . . .

(c) Deduction for amounts paid or permanently set aside for a charitable purpose.

. . . .

(2). . . . In the case of an estate . . . there shall also be allowed as a deduction in computing its taxable income any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, permanently set aside for [specified charitable purposes].

After oral argument on the parties' cross-motions for summary judgment, the court ruled from the bench in favor of the plaintiffs, and an Order was entered on March 15, 1984. Although no Memorandum-Decision accompanied the Order, the substance of the court's opinion, as expressed from the bench, was that the residuary clause conveyed the testatrix' intent to permanently set aside the estate income for charitable purposes; that in the circumstance presented here, where the charitable residuary beneficiaries would have received some of the income *but for* the imposition of an income tax, such income should be deemed "permanently set aside for charitable purposes within the meaning of section 642(c)(2)."

The government now moves the court to reconsider its Order granting plaintiffs summary judgment, primarily on the ground that the plaintiffs should be collaterally estopped from arguing their entitlement to a deduction under section 642(c)(2) due to a prior adverse determination on that issue by the Surrogate's Court of Otsego County, New York.

### I.

█ The Surrogate's Court Order arose out of a proceeding commenced by the co-executors of the Estate of Jessie Dewar in November of 1978 for a judicial settlement of accounts. The charitable residuary beneficiaries—who are the plaintiffs here—filed objections and contended that the co-executors failed to claim the charitable deduction that the estate was entitled to under 26 U.S.C. § 642(c)(2), thereby improperly overpaying taxes on the estate income for 1977. In a lengthy opinion issued December 29, 1978, Hon. Robert A. Harlem, Surrogate, addressed the question of the availability of a deduction under § 642(c)(2), in order to determine whether the co-executors should be surcharged or directed to file amended returns. Relying largely on the fact that the Dewar Will provided for taxes to be paid *before* a residuary estate could be computed, and that this instance such payment resulted in the

unavailability of funds for the residuary estate, the Surrogate concluded that the income earned by the estate in 1977 was not "permanently set aside" for a charitable organization within the meaning of § 642(c)(2), and it was therefore not improper for the co-executors to decline to claim the deduction. His determination was qualified, however, by his statement that:

> It is appreciated that the jurisdiction of this Court does not extend to determinations made concerning the federal taxability of an estate's assets or income, and it is not intended hereby to either create a precedent or impose the will of the court upon subjects over whom the court has no jurisdiction. *Decision* at 16.

The first question presented by this motion is whether plaintiffs are now precluded from asserting their right to a § 642(c)(2) deduction in this federal court action to recover an overpayment of income taxes.

As the Supreme Court explained in *United States v. Mendoza*, —— U.S. ——, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984);

> Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153 [99 S.Ct. 970, 973, 59 L.Ed.2d 210] (1979).

The doctrine is frequently invoked defensively, to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party. *Id.* 104 S.Ct. at 572 n. 4, *citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552 (1979).

The court agrees with the government that the general statement of the doctrine of collateral estoppel embraces the circumstances presented here. The Surrogate's Court decided that the income earned by the estate was not "permanently set aside" for charitable purposes within the meaning

of § 642(c)(2); that decision on an issue of law was necessary to the court's judgment with regard to fiduciary obligations and the settling of accounts; the plaintiffs herein were parties to that proceeding.

However, where—as here—a federal court is presented with an issue in an action within its exclusive jurisdiction, it is not always appropriate to accord preclusive effect to a prior state court determination of that issue, particularly if it is an issue of law. *See Lyons v. Westinghouse Electric Corp.*, 222 F.2d 184, 188, (2d Cir.) *cert. denied*, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955); *Restatement (Second) of Judgments* § 28(3); Note, *The Collateral Estoppel Effect of Prior State Court Findings in Cases Within Exclusive Federal Jurisdiction*, 91 Harv.L.Rev. 1281 (1978).

Indeed, the first *Restatement of Judgments* (1942) adopted a clear-cut rule which, if applied here, would bar the invocation of collateral estoppel:

> Where a court has incidentally determined a matter which it would have had no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly. *Id.*, ¶ 71.

In this Circuit, however, the approach to the issue has been more analytical. In *Lyons*, for instance, the defendant in a federal antitrust suit sought to preclude the plaintiff from relitigating issues that were decided adversely to the plaintiff in a prior state court action for breach of an agency contract. In a decision by Judge Learned Hand, the Court of Appeals noted that despite an identity of issues and parties, "[i]t does not, however, follow that final judgment in the state action when entered will be an estoppel in the case at bar." *Id.* at 188. The court then considered Congress' intent in according exclusive federal jurisdiction over antitrust treble damage suits, and also examined the nature of the issues the defendant sought to preclude. It then held that while the state court judgment might preclude relitigation of certain narrow factual questions, it would not preclude relitigation of the central issues underlying the claim:

> In the case at bar it appears to us that the grant to the district courts of exclusive jurisdiction over the action for treble damages should be taken to imply an immunity of their decisions from any prejudgment elsewhere; at least on occasions, like the one at bar, where the putative estoppel includes the whole nexus of facts that makes up the wrong. 222 F.2d at 189.

*See also, RX Data Corp. v. Department of Social Services*, 684 F.2d 192, 196 n. 4 (2d Cir.1982) (observing, without elaboration, that "[u]nder appropriate circumstances prior state court findings can have a collateral estoppel effect on cases within the exclusive jurisdiction of the federal courts.").

The Restatement (Second) of Judgments sets forth some guidelines that are helpful in determining whether collateral estoppel is appropriate in this case. After reciting in section 27 the general collateral estoppel doctrine, the Restatement provides in section 28 the following exception:

> § 28. *Exceptions to the General Rule of Issue Preclusion*
>
> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> . . . .
>
> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts *or by factors relating to the allocation of jurisdiction between them....* (Emphasis added).

This principle is amplified somewhat by the Reporters Notes which explain, in paragraph *d*:[1]

---

1. Although paragraph *d* addresses claim preclu- sion between courts of the same state, the com-

Not infrequently, issue preclusion will be asserted in an action over which the court rendering the prior judgment would not have had subject matter jurisdiction. In many cases, there is no reason why preclusion should not apply; the procedures followed in the two courts are comparable in quality and extensiveness, and the first court was fully competent to render a determination of the issue on which preclusion is sought. In other cases, however, there may be compelling reasons why preclusion should not apply. For example, ... the legislative allocation of jurisdiction among the courts of the state may have been designed to insure that when an action is brought to determine a particular issue directly, it may only be maintained in a court having special competence to deal with it. In such instances, after a court has incidently determined an issue that it lacks jurisdiction to determine directly, the determination should not be binding when a·second action is brought in a court having such jurisdiction. The question in each case should be resolved in the light of the nature of litigation in the courts involved and the legislative purposes in allocating jurisdiction among the courts of the state.

Congress has created an elaborate and exclusive scheme for judicial review of federal income tax liability, assigning distinct roles in that scheme to the United States District Courts and the United States Tax Courts. Without belaboring the point, that scheme suggests that a question of income tax liability may only be determined *conclusively* by the federal court invested with the authority to determine it *directly.*

This is not to say that a state court judgment could not finally determine and preclude relitigation of key issues of fact, *see Lyons, supra; Abramson v. Pennwood Investment Corp.*, 392 F.2d 759, 762 (2d Cir.1968) (dicta), or issues of state law, *see Mertons Law of Federal Income Taxation*

§ 60.28 Chap. 60 at 125–26 (1976 rev.), that are crucial to the subsequent determination of income tax liability.

In this case, however, the government asks that preclusive effect be given to a Surrogate Court determination involving the application of federal law to an undisputed set of facts, which determination was incidental to ultimate state law question before that court. In this court's view, such incidental determination should not be binding in this second action in a court with exclusive jurisdiction to determine the tax liability issue directly.

The court therefore declines to accord collateral estoppel effect to the decision of the Surrogate's Court that the Estate of Jessie Dewar would not have been entitled to a deduction pursuant to § 642(c)(2) for income it earned during the 1977 taxable year.

However, for purposes of review, the court grants the government's motion for leave to amend its Answer pursuant to Rule 15(a) to add collateral estoppel as an affirmative defense as required by Rule 8(c).

## II.

As a second ground for reconsideration, the government contends that, in granting summary judgment for plaintiffs, this court failed to appreciate that, under New York law, a determination as to whether there is a residuary estate remaining for distribution cannot be made until all pre-residuary dispositions under the Will and all expenses of administration, including taxes payable by the estate, have been accounted for.

The court is fully cognizant of that correct statement of state law. It nevertheless adheres to its previous conclusion that in a situation where, as here, the charitable residuary beneficiaries evidently would have received part of the estate income *but for* the tax on that income, such

---

ments are incorporated by reference into paragraph *e*, which pertains to claim preclusion between state and federal courts.

income should be deemed "permanently set aside" for charitable purposes within the meaning of § 642(c)(2), entitling the estate to a deduction equivalent to the amount that the residuary beneficiaries would have realized.

As the parties will undoubtedly notice, the court's view, as stated above, is not in complete accord with the view espoused by the plaintiffs, and is not accurately reflected by the previously entered Order which granted plaintiffs' motion for summary judgment. The difference became apparent to the court in reviewing the papers submitted on this motion for reconsideration, and in then further reviewing the file in its entirety.

In support of their motion for summary judgment, plaintiffs argued that the residuary clause of the Will irrevocably effectuated the testatrix's intent to permanently set aside the estate income for charitable purposes, *see Bowers v. Slocum*, 20 F.2d 350 (2d Cir.1927), and that it was irrelevant that the entire amount of estate income was applied toward the payment of administrative expenses and taxes. *See Comm'r v. Leon A. Beeghly Fund*, 310 F.2d 756 (6th Cir.1962). Plaintiffs thus sought a deduction for the entire $2.4 million reported as income in the fiduciary return.

In opposition, and in support of its cross-motion for summary judgment, the government argued that, under the terms of the Dewar Will, administrative expenses and taxes were to be paid first, and the residuary estate calculated last; that because in this instance there was no residue, it cannot be said that any income was "permanently set aside" for the residuary beneficiaries.

Then, in a Reply Memorandum, the plaintiffs made the point that "the estate's income would not have been exhausted had the charitable deduction been taken, since over two million dollars in federal and state income taxes were paid from that income." *Id.* at 4. More specifically, plaintiffs con-

tended that "if the deduction had been taken, no taxes would have been paid; and the charities would have received their proportionate share of the $2,141,619 in federal and state fiduciary income taxes paid by the estate." *Id.*

In ruling for the plaintiffs, the court found this final argument highly persuasive. As the court stated in its oral ruling following argument on the motion: [2]

In the final analysis, the defendant's argument comes down to a tautology—an example of circular reasoning. It is their position that the income is taxable because it will not be received by the charities; and that the income will not be received by the charities because it is taxable.

Plaintiffs could, of course, substitute their own tautology and state, with equal plausibility, that if the income were not taxed it would reach the charities, and if it reached the charities, it would not be taxable.

However, plaintiffs' stronger argument, which I find persuasive, is that the availability of the deduction does not depend on which came first, the residue or the tax; it depends on the testatrix's manifest intent to set aside the residue for the charities. By naming the charities in the residuary clause, without conditions or contingencies, she 'permanently set aside' the amount of income *that would constitute the residuary estate.* (Emphasis added).

■ Thus, the court was of the view then, as it is now, that the amount of estate income which was "permanently set aside" for charitable purposes was not the entire $2.4 million reported as "taxable income" on the fiduciary return, but only the amount that the residuary beneficiaries would have received *but for the income tax.*

More specifically, it appears from the exhibits that, after all administrative expenses and taxes (including over $1.7 million in federal income tax) were paid, and

2. A transcript of the oral ruling has not yet been prepared. This excerpt is from the reporter's reading of his notes.

distributions made to the non-residuary beneficiaries, a deficit of $304,534.19 remained, necessitating an abatement of the distributions to the non-residuary beneficiaries. That amount would have to be paid, with after-tax dollars, from the estate income before the amount of income that would have constituted the residuary estate could be ascertained. Only that residue would be entitled to a deduction; otherwise, the estate would be taking a charitable deduction for more income than the charitable beneficiaries could possibly have received.

The Order granting plaintiffs summary judgment states that "all of the income earned by the Estate of Jessie Smith Dewar during its taxable year ending April 30, 1977, was permanently set aside for charitable purposes and was therefore deductible ...." The Order then schedules proceedings for the purpose of making a calculation of the amount of income to be refunded to the plaintiffs.

Through inadvertance, the Order does not accurately reflect the court's oral ruling. The final statement from the bench was that "[f]urther proceedings to determine *the amount of the deduction* and the apportionment thereof may be scheduled by counsel." Thus, it was the court's expectation that the forthcoming hearing would involve the computation of the amount of income to be considered "permanently set aside" for charitable purposes, as well as the portion of that amount to be refunded to the plaintiffs herein.

It is now apparent to the court that the assistance of one with expertise in estate tax matters is required before the court can determine the amount of the deduction to which the estate is entitled, and the amount of refund to which the plaintiffs are entitled. The court will therefore appoint, pursuant to Rule 53 Fed.R.Civ.P., a special master to preside over a hearing and receive evidence on the issues of the amount of deduction and refund, and to then issue a report thereon. The court, will as soon as practicable, issue an Order identifying the special master, and addressing the issues of compensation, the scope of the reference, the special master's pow-

ers, and other procedural matters. *See* Rule 53.

In light of the reference to a special master, the hearing presently scheduled for June 6, 1984 in Albany is cancelled.

Accordingly, for the reasons set forth above, the court hereby

ORDERS, that defendant's motion for reconsideration as to the court's Order of March 15, 1984 is granted in the following respects:

(1) The Order of March 15, 1984 is vacated; the cross-motions for summary judgment are still pending.

(2) This matter is to be referred to a special master for the purpose of presiding over a hearing for the calculation of the amount of deduction to which the estate is entitled, and the amount of refund to which the plaintiffs are entitled, consistent with this decision. A subsequent Order will prescribe the details of this reference.

(3) The hearing presently scheduled for June 6, 1984 in Albany, New York, is cancelled.

And the court further

ORDERS, that defendant's motion for leave to amend its answer to assert the affirmative defense of collateral estoppel is granted.