HARTWICK COLLEGE, Aurelia Osborn Fox Memorial Hospital Society and Railroad and Local Men's Christian Association of Oneonta, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 81–CV–281.

United States District Court, N.D. New York.

Feb. 25, 1985.

---

Herzog, Nichols, Engstrom & Koplovitz, Albany, N.Y., for plaintiffs; James M. Reilly, Albany, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for defendant; Louis J. Lombardo, Tax Div. Atty., Dept. of Justice, Washington, D.C., of counsel.

McCURN, District Judge.

## MEMORANDUM–DECISION AND ORDER

This is an action by four residuary beneficiaries of the Dewar estate to recover an alleged overpayment of income taxes by the estate for the taxable year ending April 30, 1977. Presently before the court is a motion to determine the proper method of calculating the estate's charitable deduction for income tax purposes under section 642(c)(2) of the Internal Revenue Code. For the reasons set forth below, the court holds that "interrelated computations" is not appropriate for calculating the estate's charitable deduction for income tax purposes and the estate is entitled to a "straight charitable deduction".

## BACKGROUND

The court has considered the merits of the present action on two previous occasions. Briefly, the facts are as follows: Jessie Smith Dewar died testate on May 28, 1976, leaving an estate of approximately $49 million. Her will provides that first, all debts, expenses, and taxes be paid from the general estate; second, specific bequests be made to the named beneficiaries; and last, the residuary estate be divided among five named charitable organizations. After paying approximately $34 million in administrative expenses and taxes, no funds were left in the residuary estate and a deficit of $304,534.19 remained, necessitating an abatement of the non-residuary beneficiaries' distributions.

For the year ending on April 30, 1977, the estate reported a taxable income of $2,431,065.00 and paid $1,728,879.00 in income taxes. The estate did not claim a charitable deduction on the fiduciary federal income tax return because no residuary estate for the charities was left after the administrative costs and taxes were paid.

Plaintiffs in the present action are four of the charitable organizations named as residuary beneficiaries in the Dewar will. On March 5, 1980, they filed an amended income tax return for the estate requesting a refund. The Internal Revenue Service took no action. On March 27, 1981, plaintiffs filed the current action to recover the overpayment of the estate's 1976 income taxes. The complaint alleges that all of the estate's earned income qualified for the charitable deduction provided by section 642(c)(2) of the Internal Revenue Code, 26 U.S.C. § 642(c)(2). The deduction, if allowed, would leave money in the residuary estate for the residuary beneficiaries.

In a ruling from the bench, the court granted plaintiffs summary judgment. The court held that "(b)y naming the charities in the residuary clause, without conditions or contingencies, she (the testatrix) 'permanently set aside' the amount of income that would constitute the residuary estate." The estate was therefore entitled to a charitable deduction in the amount that the residuary beneficiaries would have received. An order was signed on March 15, 1984, and further proceedings to deter-

mine the amount of the income to be refunded were scheduled.

The court subsequently vacated the March 15, 1984 order on defendant's motion for reconsideration because the order did not accurately reflect the court's oral ruling.[1] In its May 31, 1984 decision, the court states, "Thus, the court was of the view then (referring to the court's previous oral decision), as it is now, that the amount of the estate income which was 'permanently set aside' for charitable purposes was not the entire $2.4 million reported as 'taxable income' on the fiduciary return, but only the amount that the residuary beneficiaries would have received *but for the income tax.*" The court noted that the $304,534.19 deficit, abated from the non-residuary beneficiaries' distributions, "would have to be paid, with after-tax dollars, from the estate income before the amount of income that would have constituted the residuary estate could be ascertained". The court ordered the matter referred to a special master for a hearing on the "calculation of the amount of deduction to which the estate is entitled and the amount of refund to which the plaintiffs are entitled".

The parties subsequently requested the court to hold the appointment of a special master in abeyance to afford them an opportunity to reach a mutually agreeable calculation on their own. Their effort in this regard has resulted in a disagreement over whether "interrelated computations" or a "straight deduction" method should be used to calculate the charitable deduction allowable under section 642(c)(2) of the Internal Revenue Code, 26 U.S.C. § 642(c)(2). Resolution of this issue, now before the court, will enable the parties to agree on the amount of the refund, if any, to be awarded pursuant to the court's May 31, 1984 Memorandum-Decision and Order, 588 F.Supp. 926.

## DISCUSSION

Analogizing to estate taxes, the government contends that "interrelated computations" must be used to determine charitable deductions for income tax purposes. The government argues that for the year in question the estate had $2.4 million of taxable income. One million dollars of that income was used to pay nondeductible, administrative estate expenses and was taxable. As a result, only $1.4 million was left for the residuary estate. The estate's tax bracket was 70%. If the estate were allowed a $1.4 million charitable deduction, it would owe $700,000 in taxes (70% of $1 million net taxable estate). However, the government argues that the $700,000 in taxes must be paid out of the $1.4 million residuary estate, thereby reducing the amount of money available to the charities. According to the government, the amount of the charitable deduction must be reduced accordingly. Reducing the charitable deduction would in turn increase the income tax owed and further reduce the residuary estate and charitable deduction allowed. The government contends that to determine the correct amount of the estate's charitable deduction, these pyramiding calculations must continue until the point where the charitable deduction actually equals the money left to pay the charities. The calculations proposed by the government can be made by a complicated algebraic formula, and the process is known as "interrelated computations".

The government concedes that if "interrelated computations" are used in the present case, the estate's income taxes will be more than $1.4 million and no money will be left for the charities. Such a result would also effectively circumvent the court's previous decisions in this action.

Although plaintiffs agree that "interrelated computations" are proper in calculating estate taxes under 26 U.S.C. § 2055(c), plaintiffs contend that Congress did not intend that "interrelated computations" be used for calculating income taxes under 26 U.S.C. § 642(c). Plaintiffs rely on *Ed-*

---

**1.** The court also rejected defendant's argument that the Surrogate Court's determination that the residuary estate was not intended to be permanently set aside for charitable purposes was collateral estoppel in the federal action.

wards v. Slocum, 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564 (1924). In *Edwards* the Supreme Court was asked to decide whether the government could use an algebraic formula to determine the amount of the charitable deduction which was exempt from estate taxes under section 403 of the Revenue Act of 1918. Section 403(a)(3) was the predecessor to section 2055(c) of the present Code and provided:

> That for the purpose of the tax the value of the net estate shall be determined—(a) In the case of a resident, by deducting from the value of the gross estate—(3) The amount of all bequests, legacies, devises, or gifts, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual or to a trustee or trustees exclusively for such religious, charitable, scientific, literary, or educational purposes. This deduction shall be made in case of the estates of all decedents who have died since December 31, 1917; ...

Revenue Act of 1918, ch. 18, § 403(a)(3), 40 Stat. 1057, 1098 (1919). The Supreme Court held that as a matter of statutory construction in determining the federal estate tax, the amount of the tax could not be included in the net estate where the residue was given to charity. The Supreme Court stated:

> The Government offers an algebraic formula by which it would solve the problems raised by two mutually dependent indeterminates. It fairly might be answered, as said by the Circuit Court of Appeals, that "algebraic formulae are not lightly to be imputed to legislators" but it appears to us that the structure of the statute is sufficient to exclude the imputation. As further remarked below,

the theory departs from the long established practice of the law not to regard the incidence of a tax in the levying of a tax, and the position of the Government is contrary to the expressed intent of the statute to encourage charitable bequests.

*Edwards*, 264 U.S. at 63, 44 S.Ct. at 293.

In response to *Edwards,* Congress added the following language to the estate tax provision:

> If the tax imposed by Section 301, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises deductible under this paragraph, then the *amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes;* ... (emphasis added)

Revenue Act of 1924, ch. 234, § 303(a)(3), (b)(3), 43 Stat. 253, 306, 307 (1924). This clause was retroactively repealed by section 323 of the Revenue Act of 1926 but restored as section 807 of the Revenue Act of 1932. The purpose of the new language was to legislatively reverse *Edwards. See Harrison v. Northern Trust Co.,* 317 U.S. 476, 479–80, 63 S.Ct. 361, 362–63, 87 L.Ed. 407 (1943); H.R. No. 708, 72d Cong., 1st Sess., p. 50.

The current provision governing charitable deductions for estate tax purposes provides:

> DEATH TAXES PAYABLE OUT OF BEQUESTS. If the tax imposed by section 2001, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this section, *then the amount deductible under this section shall be the*

*amount of such bequests, legacies, or devises reduced by the amount of such taxes.* (emphasis added)

26 U.S.C. § 2055(c).

Since the Supreme Court decided *Edwards,* Congress has shown its intent to have charitable deductions for estate tax purposes reduced by the taxes payable out of the charitable bequest. As plaintiffs emphasize, however, no such language exists in section 642(c)(2) which governs charitable deductions for income tax purposes. Section 642(c)(2) provides in pertinent part:

(T)here shall also be allowed as a deduction in computing its taxable income any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, ...

26 U.S.C. § 642(c)(2). The court agrees with plaintiffs that after *Edwards* Congress knew it had to clearly state its intent to reduce charitable deductions by taxes. The fact that Congress knew how to express this intent is evidenced by the express language Congress added in section 2055(c) for estate tax charitable deductions. However, Congress has not added any such language to section 642(c) governing charitable deductions for income tax purposes despite amending this section several times since *Edwards* was decided.

In *Edwards v. Phillips,* 373 F.2d 616, 619 (10th Cir.), *cert. denied,* 389 U.S. 834, 88 S.Ct. 38, 19 L.Ed.2d 94 (1967) (holding a bequest to foreign school district not deductible for estate tax purposes), the Tenth Circuit rejected a similar attempt to compare section 2055 with section 642(c) stating, "The sections are unrelated and the provisions of one or even the policy expressed in one cannot be carried over to the other." The court can find no clear intent by Congress to reduce the charitable deductions allowed for income tax purposes by the tax imposed. Moreover, Congress' failure to add such language after *Ed-*

*wards v. Slocum* and its subsequent amendments of the parallel provision for estate taxes strongly indicate that Congress does not intend deductions under section 642(c) to be reduced by taxes.

The cases which the government cites to support its position are distinguishable. None of them deals with whether "interrelated computations" should be used to calculate charitable deductions for income tax purposes. Moreover, they either involve estate taxes or income which never entered the estate to be "permanently set aside" for charitable purposes. For example, in *Estate of Wright v. United States,* 677 F.2d 53 (9th Cir.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 214, 74 L.Ed.2d 171 (1982), the Ninth Circuit held that the estate income could not have been "permanently set aside" by the will during the period of a will contest. Pursuant to a settlement agreement, 50% of the residuary estate went to the challengers and only 50% went to charity. Therefore, the estate was only allowed to deduct 50% of the income as a charitable deduction. Similarly in *Estate of Freund v. Commissioner of Internal Revenue,* 303 F.2d 30 (2d Cir.1962), income not actually received by the estate was not "paid or permanently set aside" for charity. The testator's share of his law partnership's income was $35,113.25. The partnership agreement allowed the partners to draw on their accounts, and the testator withdrew $23,085.91 against his share before he died. The estate only received $12,-027.34 for charitable purposes, and that sum was the allowable deduction.

The Fifth Circuit has stated:

Thus, to qualify for the charitable deduction, the amount here in question must have been (1) part of the Estate's gross income, and (2) pursuant to the terms of the governing instrument (here the Will) must have been (3) paid or permanently set aside or properly designated to be used exclusively for legitimate charitable purposes.

*Sid W. Richardson Foundation v. United States,* 430 F.2d 710, 712 (5th Cir.1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1251,

28 L.Ed.2d 544 (1971), *reh. denied*, 403 U.S. 912, 91 S.Ct. 2202, 29 L.Ed.2d 689 (1971) (estate not allowed to deduct undistributed corporate income). In the cases cited by the government, the income in question never really vested in the residuary estate so it was not "permanently set aside or properly designated to be used" for charitable purposes. In the present action, however, this court has already held that "the amount of the estate income which was 'permanently set aside' for charitable purposes was ... the amount that the residuary beneficiaries would have received *but for the income tax*". *Hartwick College v. United States*, 588 F.Supp. 926, 931 (N.D. N.Y.1984). The money in this action has already vested in the residuary estate but for the taxes, and it has been "permanently set aside" for plaintiffs.

■ The public policy behind section 642(c) is to encourage private donations to charities. Martens Law of Fed. Tax § 31.-01 (1980). *See Bliss v. Commissioner of Internal Revenue*, 68 F.2d 890, 891 (2d Cir.1934), *aff'd*, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246 (1939). With the current reductions in federal support to charitable programs, encouraging private support of charitable organizations like plaintiffs is particularly important. "Exemptions of income devoted to educational and charitable purposes are not to be narrowly construed." *Schoellkopf v. United States*, 36 F.Supp. 617, 621 (W.D.N.Y.1941), *aff'd*, 124 F.2d 982 (2d Cir.1942). *See Helvering v. Bliss*, 293 U.S. 144, 151, 55 S.Ct. 17, 20, 79 L.Ed. 246 (1934); *Hight v. United States*, 256 F.2d 795, 802 (2d Cir.1958) (stating with reference to estate tax deductions, "Congress could not have intended to encourage bequests for eleemosynary (charitable) purposes only to have them defeated by narrow construction.").

Ms. Dewar's clear testamentary intent was to help support the charitable organizations in her community and not to support the federal government. Out of a $49 million estate, government taxes and administrative expenses have eaten up $34 million. If the complicated algebraic formula that the government advocates is used in the present case, no money will be left for the residuary beneficiaries. This court will not subvert the testatrix's testamentary intent and statutory policy to benefit charity by implying to section 642(c) Congressional intent to reduce charitable deductions by income taxes without clear evidence of such intent. No such intent has been shown, and, as noted above, the language of section 642(c) and the statutory history of section 2055(c) show the opposite intent.

■ Accordingly, the court holds that "interrelated computations" should not be used to determine income taxes under section 642(c), and plaintiffs are entitled to a "straight charitable deduction" for the amount of the residue that they would have received but for the income taxes. The parties shall determine, in accordance with this decision, the proper refund due plaintiffs and submit their determination to the court for approval.

IT IS SO ORDERED.