**Earl & Shirley WEINGARDEN, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 86–1681.**

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1987.

Decided Aug. 3, 1987.

Robert J. Zinkel, Jr. (argued), Evans & Luptak, Detroit, Mich., for plaintiffs-appellants.

Jean Owens, Acting Counsel, I.R.S., William F. Nelson, Chief Counsel, Michael L. Paup, Roger M. Olsen, Tax Div., Dept. of Justice, Washington, D.C., Robert S. Pomerance, David W. Moore (argued), for respondent-appellee.

Before MERRITT and MARTIN, Circuit Judges, and CONTIE, Senior Circuit Judge.

MERRITT, Circuit Judge.

This tax case raises an intricate issue of statutory interpretation concerning the deduction of charitable contributions to veterans organizations prior to amendments to the tax law in 1984 and 1986. The issue requires an interpretation of three semantically complex, interlocking sections of the Internal Revenue Code of 1954 that cross-reference and incorporate each other, sections 170, 509 and 501. The relevant language of these sections is set forth in the appendix.

In 1979 the donor taxpayer gave a $435,000 building to Southgate Veterans of Foreign Wars Post No. 9283 in Southgate, Michigan. The specific question presented by this appeal is whether this nonprofit veterans organization was entitled to be classified as a section 170(b)(1)(A) charity (churches, schools, hospitals, welfare and certain other organizations are specified in the statute) so as to permit a more generous deduction from adjusted gross income—generally 50%, however, in the case of this capital asset it is 30%—and future loss carry forwards of unused portions of the gift, as the taxpayer argues. Or should the donor receive a deduction limited to only 20% of adjusted gross income without any carry forward as provided under section 170(b)(1)(B), as the Tax Court held? *Weingarden v. Comm'r*, 86 T.C. 669 (1986).

The parties agree that the veterans organization does not fall into the first seven subparagraphs of the subsection of section 170(b)(1)(A) which lists schools, hospitals and other specific organizations. They also agree that the interpretation issue turns on whether the donee organization comes with subparagraph viii. Subparagraph viii makes a cross-reference; it gives the more generous treatment to "any organization described in section 509(a)(2) or (3)." The interpretation problem presented to us arises because it is unclear exactly what this phrase "any organization described in section 509(a)(2) or (3)" means.

The cross-referenced section, section 509, was designed as a section of subchapter F on exemptions. It defines "private foundations"—as distinguished from publicly supported charities—that are subject to certain additional taxes. Section 509 was not specifically designed to define charitable deductions, although the cross-reference in subparagraph viii of section 170 uses subparagraphs (a)(2) and (3) for that purpose. The prefatory language of section 509(a) begins with another cross-reference. It

says that a "private foundation" is one of the many types of organizations described in section 501(c)(3), i.e., organizations operating "exclusively for religious, charitable, scientific" and other similar purposes which are not engaged in lobbying and political activities. Subparagraphs (1), (2), (3) and (4) of section 509(a) then exclude certain charitable organizations from the definition of "private foundations," thereby granting to them better tax treatment than private foundations. Subparagraph (2)—the specific subparagraph at issue in this case—excludes from the definition of private foundations publicly supported foundations that receive more than one-third of their support from gifts, membership fees and receipts from charitable services.

The question in our case therefore is whether subparagraph viii of section 170(b)(1)(A)—"any organization described in section 509(a)(2) or (3)"—should be read to include the general proviso appearing in the preface to that section which apparently requires these organizations to also qualify under section 501(c)(3). The government argues that an organization must *both* be qualified under section 501(c)(3) and meet one of the criteria listed in subsections (2) or (3) of section 509. The taxpayer argues that the specific reference to subsections (2) and (3) indicates that an organization need not meet the additional section 501(c)(3) requirement mandated by the prior general section of the statute. If the donee has to meet section 501(c)(3), it is unclear whether the veterans organization in question can meet the "no lobbying" limitation. But if the donee only has to meet the definition contained in subparagraph (2) alone, all parties agree that the deduction should be allowed because the veterans organization in question meets that standard.

Despite the Tax Court's ruling that the cross-reference in subparagraph viii includes the prefatory language of section 509(a), and thereby incorporates section 501(c)(3), we conclude that the taxpayer's argument to the contrary is more persuasive. The government's interpretation would make subparagraph viii of section 170(b)(1)(A) cover all of the cases already covered by clause vi. Clause vi, by cross-referencing section 170(c)(2), incorporates the same limitation as section 501(c)(3), and also uses part of the same public contributions test as subparagraph (2) of section 509(a). Therefore, under the government's proposed construction, there would be no cases covered by subparagraph vi that are not covered by the broader language of subparagraph viii. We do not understand what sense it would make to construe subparagraph viii to duplicate and overlap subparagraph vi.

Although we believe that the taxpayer's argument on the technical interpretation of the statute is more persuasive than the Commissioner's, it is obvious that at best the statutory scheme is ambiguous. The Tax Court called the problem of interpretation here "as difficult as capturing a drop of mercury under your thumb." 86 T.C. at 675. This difficulty arises because "the resolution of this issue ... necessitates (whichever way it is decided) a difficult analysis of a vague statutory provision" and "the legislative history provides no clue." 86 T.C. at 681.

■ The general canon of construction is that statutes imposing a tax are interpreted liberally (in favor of the taxpayer). *See Porter v. Comm'r*, 288 U.S. 436, 442, 53 S.Ct. 451, 453, 77 L.Ed. 880 (1933); 1 R. Mertens, *Law of Federal Income Taxation* § 3.05 (1986). But provisions granting a deduction or exemption are matters of legislative "grace" and are construed strictly (in favor of the government). *See* 1 R. Mertens, *supra*, at § 3.07. A special rule applies to charitable deductions, however, because these provisions are an expression of "public policy" rather than legislative grace. *See Helvering v. Bliss*, 293 U.S. 144, 150–51, 55 S.Ct. 17, 20, 79 L.Ed. 246 (1934); *Hartwick College v. United States*, 801 F.2d 608, 615 (2d Cir.1986). Provisions regarding charitable deductions should therefore be liberally construed in favor of the taxpayer. *See Hartwick College*, 801 F.2d at 615. Given this rule of interpretation, we construe the hopeless ambiguity created by this statutory scheme in favor of the taxpayer.

■ In light of the redundant, ambiguous, and opaque nature of the statutory language, the absence of legislative history or other indicia of legislative purpose, and the limited effect of our ruling,[1] we conclude that the cross-reference in subparagraph viii should be read as a cross-reference to subparagraph (2) of section 509(a) without the prefatory cross-reference in subsection (a) to section 501(c)(3).

Finally, we agree with the Tax Court that footnote 8 in the Supreme Court's opinion in *Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 546 n. 8, 103 S.Ct. 1997, 2001 n. 8, 76 L.Ed.2d 129 (1983), is not controlling. The Supreme Court suggests in that footnote that veterans organizations are subject to the twenty percent limitation of section 170(b)(1)(B) and that these contributions do not carry forward. The Tax Court was correct in its description of that footnote: "The issue concerning whether the 20 or the 50 percent limitation applied to veterans' organizations, however, was not before the Supreme Court in that case, and no explanation or analysis of the relevant statutory provisions were provided." 86 T.C. at 674.

Accordingly, we reverse the decision of the Tax Court.

CONTIE, Senior Circuit Judge, dissenting.

I believe that clause (viii) of section 170(b)(1)(A), by incorporating section 509(a)(2) or (3), necessarily incorporates the prefatory language to section 509(a) and, in turn, section 501(c)(3). In my view, a reference to "an organization described in section 509(a)(2) or (3)" *by definition* requires the donee organization to qualify as a section 501(c)(3) organization. Accordingly, I dissent.

While I agree with the majority that there is some overlap between clauses (vi) and (viii) of section 170(b)(1)(A), I disagree that the overlap is complete. Rather, I believe that the Tax Court was correct in concluding that the financial support tests in clauses (vi) and (viii) are different, and that not all section 501(c)(3) organizations will qualify under clause (vi) that can qualify under clause (viii) and vice versa. These sections were merely designed to provide section 501(c)(3) organizations two methods of qualifying as 50% donees.[1]

Further, I disagree with the majority's conclusion that its ruling in this case will have a limited effect since 20% charities have recently been reclassified as 30% charities with taxpayers being able to carry forward excess deductions. *See supra* note 1 of the Court's Opinion. This conclusion is flawed, I believe, because the court's ruling allows veterans' organizations to be classified as 50% donees; therefore, if the charitable gift does not consist of appreciated capital gain property, the taxpayer will be permitted to deduct up to 50% of his adjusted gross income the first year. Although taxpayers will be able to carry forward the remaining value of contributions for up to five years for contributions made to either 50% donees or the new 30% donees, the difference in the initial deductions in year one may be quite significant. I believe this court's present ruling may have a far reaching effect rather than a limited one.

I would, accordingly, affirm the Tax Court's judgment.

## APPENDIX

This appendix contains the relevant statutory provisions at issue in this case. The most pertinent sections have been emphasized.

---

1. The tax statute was amended by section 301 of the Deficit Reduction Act of 1984 to increase the permissible deduction for an individual's contribution to a non-qualifying charity from 20 to 30 percent and to permit the carry forward of these deductions. *See* Deficit Reduction Act of 1984, Sec. 301(a), Pub.L. No. 98–369, 98 Stat. 494, 777 (1984).

1. I note in addition that the taxpayers' dilemma could have been averted had the taxpayers chosen to request an IRS ruling or had Southgate Post attempted to have its name placed on the Cumulative List relevant to 50% donees. *Cf. Bob Jones Univ. v. Simon,* 416 U.S. 725, 728–29, 94 S.Ct. 2038, 2041–42, 40 L.Ed.2d 496 (1974).

Internal Revenue Code of 1954 (26 U.S.C.):

Section 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

(a) Allowance of deduction—

(1) *General rule*—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary.

\*      \*      \*      \*      \*      \*

(b) Percentage Limitations—

(1) *Individuals*—In the case of an individual, the deduction provided in subsection (a) shall be limited as provided in the succeeding subparagraphs.

(A) General rule—*Any charitable contribution to*—

(i) a church or a convention or association of churches,

(ii) an educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on,

(iii) an organization the principal purpose or functions of which are the providing of medical or hospital care or medical education or medical research, if the organization is a hospital, or if the organization is a medical research organization directly engaged in the continuous active conduct of medical research in conjunction with a hospital, and during the calendar year in which the contribution is made such organization is committed to spend such contributions for such research before January 1 of the fifth calendar year which begins after the date such contribution is made,

(iv) an organization which normally receives a substantial part of its support (exclusive of income received in the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501(a)) from the United States or any State or political subdivision thereof or from direct or indirect contributions from the general public, and which is organized and operated exclusively to receive, hold, invest, and administer property and to make expenditures to or for the benefit of a college or university which is an organization referred to in clause (ii) of this subparagraph and which is an agency or instrumentality of a State or political subdivision thereof, or which is owned or operated by a State or political subdivision thereof or by an agency or instrumentality of one or more States or political subdivisions,

(v) a governmental unit referred to in subsection (c)(1),

(vi) an organization referred to in subsection (c)(2) which normally receives a substantial part of its support (exclusive of income received in the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501(a) from a governmental unit referred to in subsection (c)(1) or from direct or indirect contributions from the general public,

(vii) a private foundation described in subparagraph (D), or

(viii) *an organization described in section 509(a)(2) or (3),*

*shall be allowed to the extent that the aggregate of such contributions does not exceed 50 percent of the taxpayer's contribution base for the taxable year.*

(B) *Other Contributions—Any charitable contribution other than a charitable contribution to which subparagraph (A) applies shall be allowed to the extent that the aggregate of such contributions does not exceed the lesser of—*

(i) *20 percent of the taxpayer's contribution base for the taxable year, or*

(ii) the excess of 50 percent of the taxpayer's contribution base for the taxable year over the amount of charitable contributions allowable under subparagraph (A) (determined without regard to subparagraph (C)).

(C) *Special Limitation with Respect to Contributions of Certain Capital Gain Property*—

(i) In the case of charitable contributions of capital gain property to which subsection (e)(1)(B) does not apply, the total amount of contributions of such property which may be taken account under subsection (a) for any taxable into year shall not exceed 30 percent of the taxpayer's contribution base for such year. For purposes of this subsection, contributions of capital gain property to which this paragraph applies shall be taken into account after all other charitable contributions.

(ii) If charitable contributions described in subparagraph (A) of capital gain property to which clause (i) applies exceeds 30 percent of the taxpayer's contribution base for any taxable year, such excess shall be treated, in a manner consistent with the rules of subsection (d)(1), as a charitable contribution of capital gain property to which clause (i) applies in each of the 5 succeeding taxable years in order of time.

(iii) At the election of the taxpayer (made at such time and in such manner as the Secretary prescribes by regulations), subsection (e)(1) shall apply to all contributions of capital gain property (to which subsection (e)(1)(B) does not otherwise apply) made by the taxpayer during the taxable year. If such an election is made, clauses (i) and (ii) shall not apply to contributions of capital gain property made during the taxable year, and, in applying subsection (d)(1) for such taxable year with respect to contributions of capital gain property made in any prior contribution year for which an election was not made under this clause, such contributions shall be reduced as if subsection (e)(1) had applied to such contributions in the year in which made.

(iv) For purposes of this subparagraph, the term "capital gain property" means with respect to any contribution, any capital asset the sale of which at its fair market value at the time of the contribution would have resulted in gain which would have been long-term capital gain. For purposes of the preceding sentence, any property which is property used in the trade or business (as defined in section 1231(b)) shall be treated as a capital asset.

\* \* \* \* \* \*

(E) *Contribution base defined*—For purposes of this section, the term "contribution base" means adjusted gross income (computed without regard to any net operating loss carryback to the taxable year under section 172).

\* \* \* \* \* \*

(c) *Charitable contribution defined*—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

(1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.

(2) A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by

reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B). Rules similar to the rules of section 501(j) shall apply for purposes of this paragraph.

(3) *A post or organization of war veterans, or an auxiliary unit or society of, or trust or foundation for, any such post or organization—*

(A) *organized in the United States or any of its possessions, and*

(B) *no part of the net earnings of which inures to the benefit of any private shareholder or individual.*

(4) In the case of a contribution or gift by an individual, a domestic fraternal society, order, or association, operating under the lodge system, but only if such contribution or gift is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals.

(5) A cemetery company owned and operated exclusively for the benefit of its members, or any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, if such company or corporation is not operated for profit and no part of the net earnings of such company or corporation inures to the benefit of any private shareholder or individual.

For purposes of this section, the term "charitable contribution" also means an amount treated under subsection (g) as paid for the use of an organization described in paragraph (2), (3), or (4).

(d) *Carryovers of excess contributions*—

(1) Individuals—

(A) *In general*—In the case of an individual, if the amount of charitable contributions described in subsection (b)(1)(A) payment of which is made within a taxable year (hereinafter in this paragraph referred to as the "contribution year") exceeds 50 percent of the taxpayer's contribution base for such year, such excess shall be treated as a charitable contribution described in subsection (b)(1)(A) paid in each of the 5 succeeding taxable years in order of time, but, with respect to any such succeeding taxable year, only to the extent of the lesser of the two following amounts:

(i) The amount by which 50 percent of the taxpayer's contribution base for such succeeding taxable year exceeds the sum of the charitable contributions described in subsection (b)(1)(A) payment of which is made by the taxpayer within such succeeding taxable year (determined without regard to this subparagraph) and the charitable contributions described in subsection (b)(1)(A) payment of which was made in taxable years before the contribution year which are treated under this subparagraph as having been paid in such succeeding taxable year; or

(ii) in the case of the first succeeding taxable year, the amount of such excess, and in the case of the second, third, fourth, or fifth succeeding taxable year, the portion of such excess not treated under this subparagraph as a charitable contribution described in subsection (b)(1)(A) paid in any taxable year intervening between the contribution year and such succeeding taxable year.

(B) *Special rule for net operating loss carryovers*—In applying subparagraph (A), the excess determined under subparagraph (A) for the contribution year shall be reduced to the extent that such excess reduces taxable income (as computed for purposes of the second sentence of section 172(b)(2)) and increases the net operating loss deduction for a taxable year succeeding the contribution year.

\*　　\*　　\*　　\*　　\*　　\*

SECTION 509. PRIVATE FOUNDATION DEFINED

(a) *General Rule*—For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501 (c)(3) other than—

(1) an organization described in section 170(b)(1)(A) (other than clauses (vii) and (viii));

(2) an organization which—

(A) normally receives more than one-third of its support in each taxable year from any combination of—

(i) gifts, grants, contributions, or membership fees and

(ii) gross receipts from admissions, sales of merchandise, performance of services, or furnishing of facilities, in an activity, which is not an unrelated trade or business (within the meaning of section 513), not including such receipts from any person, or from any bureau or similar agency of a governmental unit (as described in section 170(c)(1)), in any taxable year to the extent such receipts exceed the greater of $5,000 or 1 percent of the organization's support in such taxable year,

from persons other than disqualified persons (as defined in section 4946) with respect to the organization, from governmental units described in section 170(c)(1), or from organizations described in section 170(b)(1)(A) (other than in clauses (vii) and (viii)), and

(B) normally receives not more than one-third of its support in each taxable year from the sum of—

(i) gross investment income (as defined in subsection (e)) and

(ii) the excess (if any) of the amount of the unrelated business taxable income (as defined in section 512) over the amount of the tax imposed by section 511;

(3) an organization which—

(A) is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organizations described in paragraph (1) or (2),

(B) is operated, supervised, or controlled by or in connection with one or more organizations described in paragraph (1) or (2), and

(C) is not controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than foundation managers and other than one or more organizations described in paragraph (1) or (2); and

(4) an organization which is organized and operated exclusively for testing for public safety.

For purposes of paragraph (3), an organization described in paragraph (2) shall be deemed to include an organization described in section 501(c)(4), (5), or (6) which would be described in paragraph (2) if it were an organization described in section 501(c)(3).

\*    \*    \*    \*    \*    \*

SECTION 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) Exemption from taxation

An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

\*    \*    \*    \*    \*    \*

(c) List of exempt organizations

*The following organizations are referred to in subsection (a):*

\*    \*    \*    \*    \*    \*

(3) *Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political*

*campaign on behalf of any candidate for public office.*